## HICKMAN'S APPEAL.

A release by a ward to his guardian is waived by a submission to account on a citation, there being no allegation of loss of evidence by the guardian.

FROM the Orphans' Court of Delaware.

*April* 3.   A citation having issued to Hickman as guardian, the account was referred to auditors on exceptions, who reported the testimony, and that the ward was barred by a release.

The account admitted receipts, in 1831, of $450; in 1839, of sums of $50, $75, and $100; on these there was allowed, as interest, $235, a settlement having been made in 1844.

It was proved that the ward was of age in 1841, and had resided in Mercer county.   In 1844 he procured a release to his guardian, to be prepared, saying he had settled, or was going to settle.   He called on his guardian, who stated the sums received, but that he had all the money out; that he could and did not wish to pay more

interest than he had received. The ward said, if he did not get interest, he did not expect him to pay interest. The balance admitted to be due was then paid, and the release delivered.

The other facts mentioned in the opinion of the court below were not on the paper book.

BELL, P. J., overruled the report, so far as related to the release, saying, " The guardian having answered the command of the citation, by filing an account of his administration of the ward's estate, it may well be doubted whether, upon exceptions filed to that account, he can set up the receipt and release signed by Nelson, the ward, on the 10th of April, 1844, as a bar to all investigation into the truth and correctness of the account; or use it for any other purpose than as *prima facie* evidence, so far as it goes, of the true amount in his hands at a particular day. If he intended to use it as a bar to the call of his late ward, for an account, it seems to me he should have so pleaded it, and thus presented the question, whether it precluded the ward from having the kind of settlement the law contemplates and allows, as between guardian and ward. One of the reasons, and perhaps the principal one, for allowing it the quality of a bar, is that the guardian, relying on the settlement *in pais*, and the consequent release and discharge, has either handed over his papers and vouchers relating to the trust, or in the lapse of time lost them, and so is unable to state a formal account. But how can this be averred, where the guardian has, on the return of the citation issued out of this court, actually stated and settled an account into which is introduced every item of debit and credit which, on his own showing, has any relation to the trust?

" But had the paper which the auditors were prevailed on to accept, as possessing a legal quality which forbid all examination into the account, been pleaded in bar, I should have thought it insufficient to close the mouth of the late ward, upon the principles recognised and settled in Say's Executors *v.* Barnes, 4 Serg. & Rawle, 112; every one of which are, as it appears to me, directly applicable to this case. Nor is there any thing said or decided in Ex parte Cress, 2 Whart. 494, or Lukens' Appeal, 7 Watts & Serg. 48, both of which were determined upon peculiar circumstances, having no existence here, that interferes to prevent this applicability.

" This being so, it follows that we are at liberty to examine into and correct this account, just as though no such release had been

executed by the ward to the guardian; allowing to it only whatever force may belong to it as evidence, if any.

"The correctness of this conclusion is in no way impugned by the remark said to have fallen from the ward, at the time of his settlement with the guardian, that if the latter had not received interest, he, the ward, would not exact it from him. It is evident this remark was made by the party in ignorance of his legal rights, and partly in reference to a sum of money loaned, as it would seem, by the guardian to one of his sons, and of which we have no further account than that it is not known whether the son had repaid it, principal and interest, or not. Neither is any account given of its amount, or the terms upon which, or the circumstances under which, it was loaned. The remark of the ward seems also to have reference to the assertion of the guardian at the time of the settlement, that 'he had the money out at interest, all he could get out, and he did not like to pay him interest for that which he had not out.' If by this the guardian intended to say he could not keep the money at interest, it is difficult to conceive this could be strictly true. There are sums of money paid to the guardian sufficiently large to be put to interest, which he knew were to remain in his hands for years. That it would have been easy, by the exercise of an ordinary diligence, to find safe investments for these sums, cannot be doubted. At least, it ought to require more than the mere assertion of the guardian to show this could not be done. The facile acceptance by a ward, unacquainted with his affairs, of this excuse, must not be taken as proof of its truth; and as the settlement and release were unquestionably founded upon it, no great weight is due to them. Upon such vague and uncertain grounds as these, unsupported by any thing deserving the name of proof, it would be obviously unjust to release the guardian from the duty he assumed, when he undertook the trust, of putting the estate of his ward to the best uses, and making interest thereon, or show some satisfactory reason why he did not. This is the duty of every guardian, and courts hold him to a strict responsibility in its discharge.

"In the present case it appears, from the guardian's own account, that for Nelson he received at several times divers sums of money, amounting in the aggregate to $675, which remained in his hands or at interest, uncalled for, during a series of years,—and indeed during the whole minority of the ward, who lived in a distant county during this period, and, as it would seem, supported him-

self. Allowing a liberal time, in the average six months after their receipt, for putting the respective sums to interest, (and it has not been shown but that they were making interest during the whole period,) and charging it up to the 10th of April, 1844, the date of the settlement and release set up by the accountant, it amounts in the aggregate to $444; calculating the interest on the Baldwin loan at five per cent.,·and charging the guardian with the amount of interest which Baldwin swore he actually paid him. And yet in the account settled the guardian charges himself with but $235 56¼ of interest. In'the absence of all explanation,·this cannot be permitted. The difference, to wit, the sum of $208 43½; is, therefore, to be added to the debit side of his account. Decreed accordingly."

*Tilghman,* for appellant.—The release was voluntary after a settlement with the ward, who was twenty-four years of age, and in which it is not pretended any thing was concealed, and is therefore a bar. To have refused an account on that ground, would have been a tacit admission of impropriety of conduct.

*Hemphill,* contrà.—The release was a bar only to the citation, and should have been so pleaded: Ex parte Cress, 2 Whart. 494; Lukens' Appeal, 7 Watts & Serg. 48. But it was waived by the submission to account without setting it up.

But as a release it was bad, for there was no pretence of any thing more than a verbal statement of the sums received as principal and interest: McGunigal *v.* Mong, 5 Barr, 269.

PER CURIAM.—Let the decree be affirmed, for the reasons given by the president· of the court below.